# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Bankruptcy No. 15-20030-CMB |
| **MATHOOR SIVARAM and JUNE SIVARAM,** | Chapter 7 |
| Debtors. | Related Doc. Nos. 30 and 32 |
| **UNITED STATES TRUSTEE,** | |
| Movant, | |
| v. | |
| **MATHOOR SIVARAM and JUNE SIVARAM,** | |
| Respondents. | |

## MEMORANDUM OPINION

The United States Trustee ("UST") moves for dismissal of this case pursuant to 11 U.S.C. § 707(b)(3) alleging the Debtors' Chapter 7 filing is an abuse of the bankruptcy system.[1] While the Debtors concede they failed to disclose a significant increase in income immediately following their bankruptcy filing, they insist any omission was inadvertent and that the totality of the circumstances does not warrant dismissal of their case.[2] The Court agrees with the UST that allowing the Debtors to continue with this Chapter 7 case would constitute an abuse of the provisions of the Bankruptcy Code, however, the Court declines to adopt the UST's reasoning, at

---

[1] Doc. No. 30, the "Motion to Dismiss."

[2] Doc. No. 32, the "Response."

this time, that the Debtors' financial condition may serve as the sole basis for dismissal under 11 U.S.C. § 707(b)(3). Rather, the totality of the circumstances in this case constitutes an abuse of the provisions of Chapter 7. Additionally, the Court finds the Debtors have acted in bad faith. Accordingly, the UST's Motion to Dismiss will be granted and the Debtors' case will be dismissed.[3]

## Findings of Fact

Following an evidentiary hearing, the Court finds as follows: Debtor, "bread-winner" of his family, Mr. Sivaram age 65, holds a Ph.D. in biochemistry from Kent State University.[4] Co-Debtor, Mrs. Sivaram age 58, has some post-secondary education and has held a variety of hourly wage jobs.[5] Both Debtors have experienced periods of unemployment, but also periods of financial stability.[6] Mr. Sivaram has held a number of jobs for extended periods of time earning annual salaries upwards of $75,000.00.[7] However, in 2014, Mr. Sivaram was unemployed and the Debtors became unable to pay their bills.[8] Mr. Sivaram's employment prospects changed drastically late in 2014. In December of 2014, Mr. Sivaram took a position with Oragenics located in Florida.[9] On January 5, 2015, Mr. Sivaram officially began working for Oragenics,[10] earning

---

[3] This is a core matter pursuant to 28 U.S.C. § 157 and the Court will enter final judgment in this matter. Jurisdiction is appropriate pursuant to 28 U.S.C. § 1334(a).

[4] UST's Ex. No. 11.

[5] UST's Ex. No. 12 at 22—24.

[6] UST's Ex. No. 11; Transcript of the November 8, 2016 Evidentiary Hearing (Doc. No. 81, the "Transcript") at 19—25.

[7] UST's Ex. No. 11.

[8] Transcript at 24—25.

[9] UST's Ex. No. 12 at 7.

[10] UST's Ex. No. 12 at 12.

an annual salary of approximately $109,000.00[11] in addition to a one-time payment of $5,000.00 for his relocation expenses to Florida.[12]

The day before Mr. Sivaram began working at Oragenics, January 4, 2015, the Debtors filed their voluntary Chapter 7 Petition without any accompanying Schedules.[13] On February 3, 2015, the Debtors filed their Schedules.[14] The Schedules provided that both Debtors were unemployed earning a combined monthly gross income of $2,763.00.[15] The Debtors listed their monthly expenses in the amount of $5,464.00 resulting in a negative monthly net income of $2,701.00.[16] The Debtors further indicated in their Schedules that they would not be expecting an increase or decrease in income within the year after filing their Schedules.[17] The Schedules further reflect the Debtors' total unsecured indebtedness to be in the aggregate of $37,845.00.[18]

It was not until after independent inquiry by the UST that the UST learned of Mr. Sivaram's employment with Oragenics[19] and the fact that the Debtors' unemployed adult son was living with them without paying rent or otherwise contributing to the household's income or payment of

---

[11] The UST and the Debtors use different numbers representing Mr. Sivaram's annual income throughout their various pleadings ranging between $109,000.00 and $112,000.00. The fact the asserted amount of income varies slightly does not change the Court's analysis in any way.

[12] UST's Ex. Nos. 15 and 16; Doc. No. 86.

[13] UST's Ex. No. 2.

[14] UST's Ex. No. 3.

[15] UST's Ex. No. 3 at 20—21.

[16] UST's Ex. No. 3 at 24.

[17] UST's Ex. No. 3 at 21. Question No. 13 of Schedule "I" provides "Do you expect an increase or decrease within the year after you file this form?" The Debtors responded "No" by checking the corresponding box.

[18] UST's Ex. No. 3 at 25.

[19] UST's Ex. No. 4.

expenses.[20] On May 1, 2015, the UST filed the Motion to Dismiss and the Debtors filed their Response a month later.[21] On June 9, 2015, the Debtors amended their Schedules to reflect Mr. Sivaram's employment with Oragenics and increased annual income in the total amount of $109,000.00.[22] The Debtors amended their Schedules again, eleven months later, on May 23, 2016 to reflect decreased monthly expenses in the total amount of $3,947.00, leaving a net positive monthly disposable income of $5,286.00.[23]

The UST's unrefuted evidence establishes that the Debtors' disposable income, as reflected in their amended Schedules, is sufficient to fully repay all their unsecured creditors.[24] This repayment schedule deducts from the Debtors' disposable income any Social Security income as well as accounts for additional indebtedness potentially owed to the Social Security Administration for past over-payments.[25] In short, without reducing their expenses while simultaneously increasing their unsecured indebtedness and decreasing their monthly income, the Debtors would be able to pay all unsecured creditors, in full, in approximately 18 months.[26] Without these additional considerations, a payoff could occur as soon as within 8 months.[27]

---

[20] UST's Ex. No. 12 at 30.

[21] *See* Doc. Nos. 30 and 32, respectively.

[22] Doc. No. 34.

[23] UST's Ex. No. 1.

[24] UST's Ex. No. 18.

[25] The UST's accounting includes an additional indebtedness owed for Social Security overpayments in the amount of $22,488.00. *See* UST's Ex. No. 18.

[26] The Trustee's calculations takes into consideration the Debtors' opposition to the inclusion of any Social Security income in calculating their gross monthly income. *See* Doc. No. 92.

[27] UST's Ex. No. 16.

4

**Discussion**

In a Chapter 7 case, the Court, after notice and a hearing, "may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter."[28] In determining whether granting of relief would be an abuse of the Chapter 7 provisions, the Bankruptcy Code directs bankruptcy courts to consider whether "the totality of the circumstances…of the debtor's financial situation demonstrates abuse."[29]

The Motion to Dismiss alleges the Debtors' financial situation demonstrates an abuse of the Chapter 7 provisions of the Bankruptcy Code. The UST asks the Court to adopt a standard for finding abuse based solely upon the Debtors' ability to pay their non-priority unsecured indebtedness as proof of the Debtors' abuse. The UST cites a plethora of persuasive, although non-binding case law in which other courts have found abuse under § 707(b)(3) based solely or primarily on a debtor's financial condition and ability to repay his creditors in accordance with the pre-BAPCPA tradition and practice.[30] The Debtors disagree and implore the Court to look solely to the Debtors' financial condition on the day their petition was filed and determine, based upon that "snapshot" of information, that the Debtors are entitled to relief under Chapter 7.[31] Although the Court agrees with the Debtors that the order for relief is a critical date of a bankruptcy

---

[28] 11 U.S.C. § 707(b)(1).

[29] 11 U.S.C. § 707(b)(3).

[30] *See e.g., In re Jaramillo*, 526 B.R. 404, 411 (Bankr. D.N.M. 2015); *In re Mathis*, 2012 WL 909517 at *3 (Bankr. N.D. Ohio March 16, 2012); *In re Henebury*, 361 B.R. 595, 607 (Bankr. S.D. Fla. 2007); *In re Harshaw*, 345 B.R. 518, 522 (Bankr. W.D. Pa. 2006); *In re Belanger*, 524 B.R. 634, 641 (Bankr. E.D. Pa. 2006); *In re Richie*, 353 B.R. 569, 575—576 (Bankr. E.D. Wis. 2006).

[31] Doc. No. 85.

5

proceeding, the Court is not precluded from considering the Debtors' actions before or after the petition date when determining whether the filing is an abuse of the Bankruptcy Code.

Neither the Supreme Court nor the Third Circuit has ruled as to the meaning of "abuse" for purposes of § 707(b). However, other Circuit Courts have developed three distinct approaches in determining whether the circumstances of a case are demonstrative of abuse under this particular Bankruptcy Code provision. These three approaches all consider a debtor's ability to repay her dischargeable debts, however, the approaches differ in the importance they give to this factor in the overall analysis. Accordingly, these views can be described as the "*Per Se* View," the "Broad View," and the "Hybrid View."

Under the *Per Se* View, a finding that a debtor is able to repay his debts in the future, without more, is *per se* abusive of the bankruptcy process and, therefore, sufficient to dismiss that debtor's Chapter 7 case under § 707(b)(3).[32] By contrast, under the Broad View, the debtor's future ability to repay his debts is only one of six or more factors that must be considered in addressing the abuse issue and none of these factors by themselves is dispositive.[33] Other factors considered under the Broad View include whether the debtor's filing was due to sudden, unforeseen circumstances; whether the debtor incurred debts in excess of his ability to repay; whether the debtor's family budget is excessive; whether the debtor's schedules reflect his true financial condition; and whether the debtor's petition was filed in good faith.[34]

Finally, the Hybrid View "carves out a position somewhere between the extremes of the Eighth and Ninth Circuits [the *Per Se* View], on the one hand, and the Fourth Circuit [the Broad

---

[32] *See In re Lamanna*, 153 F.3d 1 (1st Cir. 1998); *In re Kelly*, 841 F.2d 908, 913 (9th Cir. 1989); *In re Walton*, 866 F.2d 981, 985 (8th Cir. 1988).

[33] *In re Green*, 934 F.2d 568, 572 (4th Cir. 1991).

[34] *Id*.

6

View], on the other."[35] Under the Hybrid View, a bankruptcy court considers a debtor's honesty in filing a Chapter 7 case and a debtor's need for a Chapter 7 discharge—either may be sufficient to find "abuse," however, several factors comprise making either of these determinations.[36] In determining the debtor's honesty in filing, a court should consider the debtor's good faith and candor in filing schedules and other documents; whether he engaged in "eve of bankruptcy purchases;" and whether he was forced into Chapter 7.[37] A debtor's need for a discharge is determined by considering the following factors: whether the debtor has the ability repay his debts from future earnings; whether he enjoys a stable source of future income; whether he is eligible for Chapter 13; whether there are state remedies with the potential to ease his financial predicament; the degree of relief obtainable through private negotiations; and whether his expenses can be reduced without depriving him or his dependents of necessities.[38]

The Court declines to adopt a particular view at this time because the outcome in this case would not be affected by that determination—the Debtors' case would be dismissed under the *Per Se* View, the Broad View, or the Hybrid View. Under both the *Per Se* View and the Hybrid View the fact that the Debtors' have disposable income available to repay their unsecured creditors in full is dispositive or sufficient, respectively, in determining whether the Debtors' filing is an abuse of the Bankruptcy Code pursuant to § 707(b)(3). Accordingly, to illustrate the facts of the instant case would require dismissal under any articulated standard, the Court will apply the most lenient of the judicial approaches, the Broad View, which provides the Court with the greatest latitude for determining whether the Debtors' Chapter 7 case constitutes an abuse of the Bankruptcy Code.

---

[35] *In re Harshaw*, 345 B.R. 518, 523 (Bankr. W.D. Pa. 2006)(citing *In re Krohn*, 886 F.2d 123 (6th Cir. 1988)).

[36] *In re Krohn*, 886 F.2d at 126 - 127.

[37] *Id*.

[38] *Id*.

7

Under the Broad View, the Debtors' financial ability to repay all of their creditors, alone, would not be dispositive or sufficient to dismiss the Debtors' case pursuant to § 707(b)(3). However, the Debtors' ability to repay their creditors ***along with*** their lack of candor throughout this case—as illustrated by the numerous failures to disclose information in their Schedules—may constitute an abuse of the Bankruptcy Code warranting dismissal pursuant to § 707(b)(3). The Court considers each of the Broad View factors in turn.

First, the Debtors have the ability to repay their creditors. The UST's undisputed evidence illustrates that the Debtors' disposable monthly income is sufficient to pay the entirety of the Debtors' unsecured creditors[39] in as little as 8 to 18 months.[40] In fact, had the Debtors used their increased disposable income to pay creditors at the inception of their case, their unsecured creditors would have already been paid in full. Additionally, the fact that the Debtors are solvent, raises an inference that the Debtors are seeking to take an unfair advantage of their creditors, but solvency alone is not a sufficient basis for finding that the Debtors have in fact substantially abused the provisions of Chapter 7.[41] The presence of other factors, however, confirms the inference and, therefore, the first factor weighs in favor of a finding of abuse.

Second, the Court cannot determine whether the Debtors' filing was due to sudden, unforeseen circumstances. The record is silent as to the specific circumstances that precipitated the Debtors' bankruptcy filing. Accordingly, this factor neither weighs in favor of a finding of abuse nor against such a finding.

---

[39] The total amount owing to creditors includes an unliquidated and contingent unsecured claim that may be owed to the Social Security Administration for overpayment in the amount of $22,488.00. *See* UST's Ex. No. 18.

[40] UST's Ex. No. 18.

[41] *See In re Green*, 934 F.2d 568, 572 (4th Cir. 1991).

Third, the Debtors incurred debts in excess of their ability to repay. The Debtors' initial Schedules themselves provide for a negative net income. Yet, while unable to pay their own bills, Mr. Sivaram testified that he supports his adult son[42] and provided his adult daughter with a vehicle when hers was not working well.[43] Such circumstances constitute a finding that the Debtors did, in fact, incur debts in excess of their ability to repay because they directed their resources towards family members at the expense of their creditors. This factor weighs in favor of a finding of abuse.

Fourth, the UST does not argue nor does the Court conclude that the Debtors' family budget is excessive.[44] This factor militates against a finding of abuse.

Fifth, the Debtors' Schedules did not initially reflect their true financial condition. The Debtors' Schedules were not filed until February 3, 2015. Mr. Sivaram testified that, in December of 2014, he would be working for Oragenics in January of 2015. Thus, the Debtors knew at the time of filing their Schedules that Mr. Sivaram was, in fact, employed and that the Debtors would be experiencing an increase in monthly income within a year of filing their case. The Schedules do not disclose any of these facts and these facts were only disclosed after the UST inquired about them. The Debtors defend their decision to file a Chapter 7 case despite Mr. Sivaram's new employment citing the Debtors' age along with their assertion that Mr. Sivaram's employment with Oragenics is precarious—making Chapter 7, rather than Chapter 13, the more appropriate bankruptcy chapter for the Debtors' situation. Although Mr. Sivaram testified that his employment at Oragenics is tenuous because Oragenics operates month-to-month,[45] the Debtor

---

[42] Transcript at 30.

[43] Transcript at 52.

[44] Transcript at 55—56.

[45] Transcript at 47.

provided no additional evidence to corroborate this self-serving statement and, ultimately, the Court does not find Mr. Sivaram's testimony compelling on this point. The fifth factor favors a finding of substantial abuse.

Lastly, the Debtors' petition was not filed in good faith. "Good faith" is generally examined under § 707(a) of the Bankruptcy Code and this standard is informative. "Although the Code does not define 'good faith,' courts in this circuit have uniformly held that '[a]t the very least, good faith requires a showing of honest intention.'"[46] Mr. Sivaram testified he had not intended to deceive the Court or the UST, however, this assertion flies in the face of the evidence that the Debtors knew of Mr. Sivaram's employment with Oragenics prior to filing and failed to disclose it until pressed by the UST.[47] Because the facts do not support Mr. Sivaram's statements, the Court does not find this testimony credible. The Debtors filed their Chapter 7 case knowing they would be receiving substantial new income while representing, under oath, they would not be. The fresh start granted to debtors in Chapter 7 is not intended to be a head start[48] and the Debtors may not avail themselves of the benefits of Chapter 7 for this purpose. This factor weighs in favor of dismissal for abuse.

The majority of factors weighs in favor of dismissal due to the Debtors' abuse of the Bankruptcy Code provisions pursuant to § 707(b)(3): the Debtors can fully repay their unsecured creditors without any diminution in their own expenses and, therefore, are not in need of a Chapter 7 discharge; the Debtors voluntarily provide support to adult children rather than pay their creditors; the Debtors significantly and intentionally misrepresented their financial circumstances

---

[46] *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000)(internal citations omitted)(explaining the standard for a showing of "good faith" under 11 U.S.C. § 707(a)).

[47] Schedule I specifically instructs debtors to "[e]stimate monthly income *as of the date you file this form*" (emphasis supplied). The Debtors' income, as of the date they filed Schedule I, was not accurately reflected in Schedule I.

[48] *In re Bacon*, 212 B.R. 66, 76 (Bankr. E.D. Pa. 1997).

on their Schedules; and the Debtors intentional misrepresentations in their Schedules are indicative of a bad faith filing.

## Conclusion

The Debtors unquestionably have the ability to repay their creditors. Although the Court declines, in this instance, to find that the ability to repay, absent other factors, is sufficient to dismiss or even requires dismissal under 11 U.S.C. § 707(b)(3), the totality of the circumstances surrounding this case amounts to a substantial abuse of the Bankruptcy Code and dismissal is appropriate. An Order will be entered contemporaneously with this Memorandum Opinion.

Date: February 23, 2017 /s/ Carlota M. Böhm
Carlota M. Böhm
United States Bankruptcy Judge

**MAIL TO:**

Michael S. Geisler, Esq. and the United States Trustee.

FILED
2/23/17 10:26 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA